# Appeal of the Pennsylvania Company.

A power of attorney, under seal, irrevocable and expressly stated to be for "value received" to transfer a bond, is prima facie a sale of the bond, for a present consideration, to the person in whose favor it is made, and relieves him from the burthen of proving that he paid value therefor when transferred to him.

January 15th 1878. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Trunkey, JJ.

Appeal from the Orphans' Court of *Philadelphia county* : Of January Term 1878, No. 3.

Appeal of the Pennsylvania Company for Insurance on Lives and granting Annuities, executors of Henry Etting, deceased, from a decree of the court awarding a claim of $1000 to Miss Miriam G. Etting out of said decedent's estate.

The auditing judge found substantially the following facts : The decedent died on the 15th of February 1876, leaving an estate worth about $90,000, and a will, wherein he gave to his sister, the claimant, the income from $40,000 thereof for life, with the right to bequeath $5000 of the principal. The testator and claimant resided together for about twenty years, he having charge of her business, keeping her bank book, and making all the entries therein. About the 9th of December 1869, claimant received a legacy of $1000 from her deceased aunt, which testator deposited in his sister's bank account. On December 27th 1869, this sum was drawn out by her check to his order, and received by him for investment for the claimant. On the stub of this check was the following, purporting to be made by her, but in his handwriting : "No. 19, Dec. 29 1869. Henry Etting, order $1000, for investment for my account."

Upon the stub of the bond book of the Lehigh Valley Railroad Company, under date of November 8th 1871, it appeared that a registered bond for $1000, No. 4616, had been issued to the claimant. On January 23d 1872, she executed the following power of attorney to the testator :—

" Know all men by these presents. That I, the undersigned, for

value received, do hereby irrevocably constitute and appoint Henry Etting to be my true and lawful attorney, for me and in my name and behalf, to sell, assign and transfer unto himself, or any other person or persons, one seven per cent. bond for one thousand dollars, registered in my name, and numbered 4616 of the Lehigh Valley Railroad Company.

In witness whereof I have hereunto set my hand and seal,

MIRIAM G. ETTING.    [SEAL.]

On the same day testator transferred said bond on the books of the company to himself.

From the deposition of claimant, which was offered in evidence, it also appeared that she never received from testator any security in which her legacy was invested, and never received the money from him; that she did not know that that money was ever invested by him for her, and she did not think it was.    She had spoken to her brother about it, but he had never told her in what he invested the money; never paid her any interest upon it, and she never asked him for any.  Claimant also testified she never owned a bond of the Lehigh Valley Railroad Company, and never transferred any such bond to her brother.

There was no evidence offered by accountants of any payment by testator to the claimant of the value of the $1000 Lehigh Valley Railroad bond transferred to himself on February 20th 1872, and it was stated on their behalf that they had been unable to find among the securities and assets of the estate any investment by testator for his sister, the claimant, and remaining in his possession at the date of his decease.

Claimant, in her deposition, admitted, on cross-examination, that the testator, since 1869, had made considerable outlays in her behalf for board, and to the extent, as she supposed, of $1000 per annum.  But on re-examination she also stated that his outlays for her board commenced three or four years prior to 1869, and that there was no understanding between herself and brother as to the application of her legacy to the payment of board.

Counsel for the company objected to the allowance of the claim of Miss Etting.  First. Because the presumption was, from the fact of her giving the testator the power of attorney to sell or assign the $1000 bond standing in her name, that he had paid her for the same, and she was bound to prove she had not received the value of the bond.  And second. Because the claimant was largely indebted to the testator for expenditures made on her behalf for boarding, &c.

The auditing judge found " that giving full weight to the objections made, still, under the evidence, the claimant is entitled to recover.  The testator undoubtedly made the investment for his sister in the Lehigh Valley Railroad bond, which fact she never, in

all probability, fully understood, or has forgotten, and collected the interest thereon for her, and that he subsequently purchased the bond himself, cannot be denied. Having done this, in the event of the interest being demanded, and the value of the bond also, by his sister, it would be incumbent upon him to show that he had paid her the same. She would not be called upon to prove a negative. As to the expenditures by testator for the board of his sister, there was no evidence, except the statement made by her, before referred to. There were no charges in any books kept by him against her, and in view of the near relationship between them, and the affectionate provision made for her in his will, it may safely be presumed that all such expenditures were gratuitously made for her benefit.

" For these reasons the claim of Miss Miriam G. Etting is allowed, and she is awarded the sum of $1000, with interest from February 15th 1870, being six years prior to testator's death, until May 1st 1877."

The court in banc dismissed the exceptions made to this award, and affirmed the same. The company then took this appeal, alleging that the court erred,

1. In awarding any amount to Miriam G. Etting as a creditor.

2. In awarding her interest from the 15th day of February 1870, on her claim, under the testimony that there had been an investment of the $1000 in a Lehigh Valley Railroad bond, which remained in her name until 20th February 1872, and in the absence of any proof that the testator had collected interest on said bond.

3. In not allowing the expenditures by the testator, in behalf of the decedent, as a set-off against her claim.

4. In not finding that the power of attorney given by claimant to testator, on the 20th of February 1872, was a transfer to the testator by the former of the Lehigh Valley Railroad bond, and that no pecuniary liability by him to her was thereby created.

*John G. Johnson,* for appellant.—The legacy to the claimant being of a larger sum, satisfied the debt to her if any existed : Wesco's Appeal, 2 P. F. Smith 197 ; Horner *v.* McGaughy, 12 Id. 191. The exceptions to the application of the rule are elaborately stated in 2 Roper on Legacies, 1030 to 1053. The law presumes that every legacy is intended to be a clear gratuity, but this presumption may be rebutted by parol proof : Ziegler *v.* Eckert, 6 Barr 13.

Testator's transfer to himself of the Lehigh Valley bond for $1000, under an "irrevocable" power, given to him for "value received," did not make him a debtor to the claimant. For "value received" she gave him a power of attorney to transfer the Lehigh Valley bond "to himself or any other person or persons," and, on

[Appeal of the Pennsylvania Company.]

the same day, in pursuance thereof, he transferred it to himself. How was he thereby transformed into a debtor ? The power itself is in the form in cases of sales of stocks or loans usually delivered with the certificates or bonds, in order to make the transfer complete. Has it ever been thought that the person making such a transfer, under such a power is liable to account, as agent, for the proceeds ?

*Lewis Waln Smith*, for appellee.—The argument of appellants is based on the relation of debtor and creditor, and not on that of trustee and *cestui que trust.* The facts, as found by the court, show the confidential relation and create a trust. The rule of law, therefore, as to debtor and creditor, does not apply. Conceding, however, that the rule does apply, all the decisions of this court show that it is held in great disfavor. In Horner *v.* McGaughy, 12 P. F. Smith 191, and Zeigler *v.* Eckert, 6 Barr 13, the court seized on some small pretext and refused to apply the rule ; while in Wesco's Appeal, 2 P. F. Smith 197, they applied it only because an auditor had found the facts to be that it was the intention of testator to discharge the debt by a legacy. The legacy in this case fails in one of the essential particulars to make it apply, viz., that it must be certain and payable immediately. In this case the legacy was not certain. It was merely an annuity, and had the appellee died within a month of decedent she would have received not $200 from his estate. She did not receive under his will a dollar as a certainty, and the fact that she may live long enough to make the sum coming to her reach the amount due her, does not give that certainty to the legacy to make the rule apply. Nor was it payable immediately. In fact, it was no legacy to her at all.

The principle here laid down is novel. An agent takes a power of attorney to sell and transfer a bond for his principal, and under the power transfers the bond to himself. Because the power recites it was given for value, therefore, he does not have to account for the bond to his principal. There is no pretence that the paper executed by Miss Etting was a bill of sale, or anything but a power to transfer. No authority has been found for that doctrine.

Mr. Justice Paxson delivered the opinion of the court, March 25th 1878.

There is no dispute as to the fact that, on the 29th of December 1869, Henry Etting, the testator, received from the appellee, his sister, the sum of $1000 for investment on her account. She says in her deposition that she never received this money from him ; that she did not know that the money had ever been invested for her ; she did not think it had. The books of the testator contained no trace of any such investment. At the time of the receipt of the $1000 the parties were living together at a boarding-house in the

city of Philadelphia.  It was conceded that for several years prior to his death the testator had expended about $1000 per year for the support of his sister.  He also gave her, by his will, the income of $40,000 for life, with the right to bequeath $5000 of the principal. Whatever may be the merits of this controversy there can be no ground to infer, in the face of these facts, that Mr. Etting intended any wrong to his sister.  He cannot give his version of the transaction for he is dead.  The counsel representing his estate allowed the appellee, who is the claimant here, to testify as to her recollection of it.  If there is a difficulty in arriving at the exact truth it is, in part at least, owing to the absence of documentary proof, the result of the entire confidence between the parties.  Had the case rested here, it is clear the claim of the appellee would have been barred by the statute.  But it appears that, on the 8th of November 1871, a registered bond of the Lehigh Valley Railroad Company, for $1000, was issued to the appellee.  The auditing judge finds that the $1000 received by the testator, on the 29th of December 1869, went into the purchase of this bond.  There is nothing in the record to support this finding beyond the fact that the two sums are equal in amount.  While the evidence has not been sent up, I infer from the adjudication of the court below, that Miss Etting's statement, and the stub of the bond book of the Lehigh Valley Railroad Company, were all the judge had to throw light upon this subject.  He says of the former : "She says she never owned a bond of the Lehigh Valley Railroad Company, and never transferred any such bond to her brother."  That she had forgotten, or never fully understood this transaction, as suggested by the court below, seems probable from the fact that, on the 20th of February 1872, she executed a formal power of attorney to transfer the bond.  Under this power the testator the same day transferred the bond to himself.  This transfer is made the subject of the present claim, the court below holding that the burden of proof was upon the appellants to show that Mr. Etting had accounted to his sister for the proceeds of the bond; and inasmuch as this transaction occurred within six years, that it was not barred by the statute.  The paper referred to is called a power of attorney.  But it is something more.  It is under seal, is irrevocable, and is expressly stated to be "for value received."  An ordinary power of attorney to transfer stock is not irrevocable and does purport to be for value. The instrument in question is prima facie a sale of the bond to the person in whose favor it was made.  It is precisely such a paper as is in daily use in the stock market, and is only given in case of a sale of the stock.  Upon its face it imported a sale of the bond to Mr. Etting, the testator for value, with an irrevocable authority to him to transfer it to himself.  Its legal effect is precisely the same as if it had contained the words " in

consideration of the sum of $1000 I authorize Henry Etting," &c. It closely resembles the case of the delivery of a conveyance of real estate or other property, containing a receipt for the payment of the purchase-money. While such receipt is not conclusive of such payment and may be rebutted, it has always been held to be prima facie evidence. The court below held that the power of attorney was presumptive evidence; that the testator had not paid value or accounted for the bond. In other words, the court reversed the burden of proof and held that the appellee's declaration, under her hand and seal, that she had received the value of the bond, created a presumption that she had not. This, too, in the face of her testimony that she had never owned such a bond. There is not enough in the case to justify a decree against the appellants. There is not sufficient light. It is easy to make a claim against a dead man's estate. It is of the highest importance that such claims, when stale, should be scrutinized. Looking at the surroundings of this case there is nothing to commend it to our favorable consideration. It was barred by the statute when the testator died. The appellee made no claim upon him during his lifetime, nor did she ever speak to him upon the subject. In view of their relations —the mutual confidence—the generous conduct of the testator to his sister, it is not likely that their business intercourse was conducted upon strictly business principles, or that care was taken to preserve the evidence of payments. The memory of the appellee was evidently at fault in regard to the Lehigh Valley bond, which, although standing in her name and subsequently transferred by her, she had entirely forgotten. Her memory may have been equally defective in regard to other matters, particularly the payment of the $1000 in controversy, its investment or application for her benefit by the testator. While this does not necessarily follow, it is suggestive of a scrutiny into the merits of a claim made after so great a lapse of time, and under circumstances which render it difficult to ascertain the very truth of the case.

The decree is reversed at the cost of the appellee.

SHARSWOOD, MERCUR, and WOODWARD, JJ., dissent.